BRODER et al. v. ZENO MAUVAIS MUSIC CO.

(Circuit Court, N. D. California.    June 1, 1898.)

No. 12,193.

1. COPYRIGHT—PRIORITY—EVIDENCE.
    On conflicting evidence, *held,* that Bert A. Williams was the original composer of the copyrighted song "Dora Dean," and that Charles Sidney O'Brien, in pretending to compose the melody of the song "Ma Angeline," which was copyrighted by him, pirated the melody of the song "Dora Dean."

2. SAME—COPYRIGHTABLE WORDS—IMMORAL CHARACTER.
    Musical compositions of immoral character cannot be protected by copyright; but where a copyright is held invalid because of the use of a word of immoral significance the owners thereof may republish the song, omitting the objectionable matter, and obtain a valid copyright therefor.

3. SAME—RESTRAINING ORDER—DAMAGES.
    A defendant, who is shown to have pirated a song from complainant, is not entitled to damages occasioned to him by a restraining order, though the court dissolves such order because of the invalidity of complainant's copyright.

H. C. Dibble, for complainants.
H. R. Wiley, for defendant.

MORROW, Circuit Judge.    This is a suit for infringement of the copyright to a song entitled "Dora Dean," alleged to have been composed by Bert A. Williams, who sold all his right, title, and interest in and to the same to the complainants.    It is claimed that the song "Ma Angeline," alleged to have been composed by Charles Sidney O'Brien, and by him sold to the defendant company, was pirated from the song "Dora Dean."    On the other hand, the defendant, in

and by its answer and cross bill, claims that the song "Dora Dean" was pirated from the song "Ma Angeline." Both of the songs are colored melodies, and both of the alleged composers of "Dora Dean" and "Ma Angeline," respectively, are colored gentlemen. It is conceded that the melody of the two songs is substantially the same. Charles Sidney O'Brien, the alleged composer of "Ma Angeline," secured a copyright for his song on February 6, 1896, while Bert A. Williams, the alleged composer of "Dora Dean," secured a copyright for his song on February 10, 1896, or only four days after O'Brien got his copyright. Each of these alleged composers charges the other with having pirated the melody, merely changing the title and words. The important question to be determined, therefore, is, which of these two alleged composers first composed his song. A second question also arises in this case, and that is whether the use of the word "hottest" in the song "Dora Dean" as first published has the effect of rendering the song obscene and vulgar, and thereby of excluding it from the class of compositions that may be copyrighted. The evidence is of a voluminous and conflicting character. The case must be determined largely upon the credibility of the witnesses adduced for each side, and upon the inherent probabilities and improbabilities of their stories. The case as made out by the complainants is this: Bert A. Williams first conceived the idea of the song "Dora Dean" on or about the latter part of July, 1895, in San Francisco. In August following, Williams, being a vaudeville artist, was employed by the proprietors of a vaudeville resort in San Francisco, called the "Midway Plaisance," to do a performance on the stage, and play in a café afterwards. It appears that he played the piano and his partner did the singing. During the course of his employment there, he worked out and composed the song "Dora Dean." It further appears that Charles Sidney O'Brien, the alleged composer of the song "Ma Angeline," frequented the resort at which Williams was then employed, where he occasionally rendered services to the management by assisting in songs and such like work. He played the banjo and sang. He and Williams became acquainted with each other. According to Williams, O'Brien first heard the melody of "Dora Dean" while the former was working out and practicing the song, and singing the same in the presence of the attaches and frequenters of the resort. Williams testified that O'Brien came to him, and asked him to teach him the song, representing that he was going out with a minstrel troupe, and that he wanted something that nobody else had, and that he (Williams) complied with his request, and taught him the song. The testimony of Williams is corroborated in several respects by a number of witnesses who testified that they first heard Williams compose and rehearse the song "Dora Dean," and that Williams frequently sang it to them to obtain their opinion. Furthermore, Williams was corroborated as to the fact that O'Brien had frequented the resort where Williams had been employed, and where he had composed and practiced the song. The testimony and evidence on behalf of the complainant also shows, without entering into detail, that on August 30, 1895, George W. Hetzel, a musician and arranger of music, took down the melody of "Dora Dean" from

Williams, who had completed the song some time previous. On September 30, 1895, Hetzel received the words of the song from Williams. The draft of the song, in the handwriting of Williams, was introduced in evidence. On November 24, 1895, Hetzel had completed the piano arrangement for publication, and on November 30th ensuing a copy was delivered to the printer. On December 10, 1895, the proof was read and revised, and a copy given to the complainants. On December 13, 1895, the stereotyped plates of the song were delivered to the complainants, and, on December 14, 1895, the plates were given to the H. S. Crocker Company to do the presswork. A delay then occurred in securing the copyright, owing to the fact that Williams desired to have the song introduced to the public by two noted vaudeville artists, and desired to print their pictures on the title page. The time consumed in communicating with them and in obtaining their permission caused the delay in getting the song out. On January 21, 1896, the complainants gave their order to the H. S. Crocker Company to print the song, and it was finally brought out on February 4, 1896. On that day, the title page of the song was sent from San Francisco to the librarian of congress to be copyrighted, and was deposited in the latter's office on February 10, 1896. A copyright was thereafter duly issued to the complainants. It is to be noted that the song "Ma Angeline," alleged to have been composed by O'Brien, and owned by the defendant company, was issued for public sale on the same day in San Francisco that the song of complainants was, viz. February 4, 1896.

The case presented by the defendant company in support of its defense that O'Brien did not pirate from Williams' song, "Dora Dean," but that, on the contrary, Williams pirated from O'Brien's song, "Ma Angeline," is briefly as follows: O'Brien testified that he was a singer and comedian; that he first conceived the idea of the melody of "Ma Angeline" in 1887, while in Liverpool; that he sang the melody, with some of the words, at various places and times in San Francisco prior to the time of the song's publication, and previous to the composition of the song "Dora Dean" by Williams; that the song, as originally written by him, contained the name "Ma Angeline"; that in singing said song he would change the name from "Ma Angeline" to "Dora Dean," "Josephine," or "Seraphine," as his fancy dictated; that during the entire time of the Midwinter Fair held in San Francisco the first half of 1894, he was employed and sang at various concessions at the Fair called "The Palace of Black Art," "Cooney Island Lunch Counter," and "The 49 Mining Camp"; that, during the greater part of the time he was so employed he was assisted in singing by one Frederick H. Worth and one Isaac Long; that the song "Ma Angeline" was sung by them frequently during the said Fair; that he knows Bert A. Williams, and that Williams often came to his (O'Brien's) place of business, and heard him sing the song "Ma Angeline"; that he sold the song to the Zeno Mauvais Music Company, the defendant, on January 30, 1896, for five dollars. It further appears from the evidence introduced on behalf of the defendant that the melody of the song "Ma Angeline" was taken down by one Donigan, otherwise known as Lee Johnson, a musician and solo

cornetist. Donigan negotiated the sale from O'Brien to the defendant, and receives a royalty upon the sale of the song. He secured, on January 31, 1896, the services of Charles H. Reed, a musician, to arrange the music for the piano, and to make a proper arrangement of the song. This work appears to have been despatched without delay, for the song was placed in the hands of the printer the same or the next day, and on February 4, 1896, as stated, the song "Ma Angeline" came out simultaneously with that of "Dora Dean." The title page of "Ma Angeline" had, however, been sent to Washington on February 1, 1896, some four days before that of "Dora Dean" was forwarded. Many witnesses were called for the defendant, who testified that they had heard O'Brien sing "Ma Angeline" at the various places and times testified to by him before the song "Dora Dean" was produced; notably at the Midwinter Fair held in San Francisco the first part of 1894. In rebuttal, the complainants introduced witnesses who testified with equal positiveness that they had never heard the song "Ma Angeline" sung at the Midwinter Fair, and that, if such a song or melody had been sung, they were in a position to know that fact, and would have noticed it.

It is obvious, from this brief statement of the case as presented pro and con, that the issue of piracy must be determined upon the veracity and credibility of the witnesses. It would serve no useful purpose to analyze the testimony, and make comparisons, which would necessarily involve much detail; but upon the whole of the case I am compelled to accept the testimony and evidence adduced by the complainants as the more reliable and trustworthy. I am satisfied that Williams first conceived the melody, which is common to both of the songs "Dora Dean" and "Ma Angeline," and that O'Brien pirated the same, merely changing the title and words. The evidence shows very clearly, to my mind, that Williams, by reason of his musical proficiency and education, was far more competent and more likely to produce a song than O'Brien. Williams appears to be regarded as a very clever vaudeville artist, whereas the evidence does not warrant the belief that O'Brien is anything more than a street or saloon negro minstrel. It appeared affirmatively from O'Brien's own admissions that he played the banjo and sang negro songs in saloons and such like resorts, passing around the hat for his livelihood. Furthermore, it is extremely singular that a song whose melody proved to be as popular as "Ma Angeline" has shown itself to be, should have been sung by O'Brien from 1887, when he testifies he first conceived the melody, to 1896, when it was first publicly produced and sold in San Francisco, without it having been noticed more generally than is testified to by the score or so of witnesses who appeared in behalf of the defendant. It is strange that, if it be true that O'Brien and two others sang the song at the Midwinter Fair, which lasted for several months, and at other resorts in San Francisco, it did not attain any appreciable degree of popularity until its production, simultaneously with the song "Dora Dean," in the early part of 1896, at San Francisco. Nor does the evidence on behalf of the defendant satisfactorily explain why it was, if the melody of the song "Ma Angeline" was so catchy and well received by those who heard it, that O'Brien

never secured a copyright for the same until the early part of the year 1896, when he had heard Williams sing the melody of "Dora Dean," and it appears, by the evidence presented on behalf of the complainants, after he had actually sung not only the melody, but the words, of the song "Dora Dean" at the Alcazar Theater in San Francisco. This evidence tends to show very strongly that O'Brien had heard, and was very familiar with, the song "Dora Dean." Finally, when it was determined by O'Brien, one Donigan, also known as Lee Johnson, and the defendant company, which bought the song through the mediation of Donigan, to write, publish, and copyright the song, matters were so rushed that a copyright for the song was obtained just four days before that for the song "Dora Dean" was secured, and both songs appeared for sale in San Francisco on the same day, as already stated. Such anomalous and peculiar state of facts certainly invites suspicion, and tends to cast discredit on the contention, so earnestly pressed by counsel for defendant, that O'Brien was the original composer of the melody common to both "Dora Dean" and "Ma Angeline." But it is needless to enter into the several inconsistencies and incongruities which a careful analysis of the case presented on behalf of the defendant would show. It is my belief that the complainants have established their case by a reasonable preponderance of evidence; that Williams was the original composer of the melody of the song "Dora Dean"; and that O'Brien, in pretending to compose the melody of the song "Ma Angeline," pirated the melody of the song "Dora Dean." So far as the melody of the songs is concerned, therefore, the complainants have established a better right to the copyright than the defendant.

Another question arises, however, and that is as to whether the complainants are entitled to a copyright in view of the fact that the word "hottest" in the verse, "She's the hottest thing you ever seen," is used by Williams in his song "Dora Dean." In other words, the question arises whether the use of the word "hottest" in the connection referred to renders the song morally objectionable, musical compositions of an immoral character not being protected by copyright. Lawrence v. Smith, Jac. 471; Walcot v. Walker, 7 Ves. 1; Martinetti v. Maguire, 1 Abb. (U. S.) 356, Fed. Cas. No. 9,173; Shook v. Daly, 49 How. Prac. 366, 368; Drone, Copyr. 181; 7 Am. & Eng. Enc. Law (2d. Ed.) 538. The original restraining order was discharged, and a motion for a preliminary injunction denied by my predecessor, now Mr. Justice McKenna, on the ground that the word "hottest," as used in song "Dora Dean," was an indecent and obscene expression. Since that ruling additional testimony has been presented on both sides. That introduced on behalf of the complainants is to the effect that the word "hottest," as used in the song "Dora Dean," and as understood by colored people, has no obscene or vulgar meaning, but simply means "great," "grand," "brilliant," or, as one of the witnesses stated, it means, with colored people, the same as the expression, "She's out of sight," does with some white people. On the other hand, the witnesses for the defendant testify that the word "hottest," as used in the song "Dora Dean,"

is obscene and vulgar. While it cannot be said that the word "hottest," as used in its ordinary sense, is vulgar per se, yet in its colloquial or vernacular meaning, as applied to a woman, it is obviously different. The word "hot," as defined in Webster's Unabridged Dictionary, means, among other things, "lustful, lewd, lecherous." As used in the song "Dora Dean," it is used in its superlative sense, and is applied to a female. It is difficult to escape the conclusion that the word "hottest," as used in the song "Dora Dean," has an immoral signification. Several songs were introduced in evidence by the complainants which appear to have been copyrighted, and which contain such words and expressions as "hot stuff," "hot," "warmest," "red hot coon," and other similar words and phrases, and it is argued that the use of the word "hottest" in the song "Dora Dean" is no more objectionable than the words above referred to in the songs introduced in evidence. It is to be observed that some of these expressions also referred to women. But the fact that such words and expressions may be found in other songs which have been copyrighted does not justify the court in upholding the use of the word "hottest" in the context in which it is used in the song involved in the case at bar. Nor can the contention that the word "hottest" is immaterial be upheld. The word is given a prominent part in the chorus, and is printed on the title page in the refrain, "The Hottest Thing You Ever Seen." It therefore can hardly be regarded as an immaterial word when it appears to give character to the whole composition. I am of the opinion that the word "hottest," as used in the chorus of song "Dora Dean," has an indelicate and vulgar meaning, and that for that reason the song cannot be protected by copyright. This decision will, however, not prevent the complainants from republishing their song, and, by omitting the objectionable word, thus to secure a valid copyright therefor. In fact, it appeared in evidence that the complainants had since been publishing the song "Dora Dean" in this form. It results from what has been said that, while the complainants are undoubtedly entitled to a copyright for the melody of the song "Dora Dean," yet they are not entitled to a copyright of the song with the objectionable word in the composition. The bill will therefore have to be dismissed. The cross bill will also be dismissed.

The defendant claims that it is entitled to be reimbursed for such damages as it suffered by reason of the restraining order which prevented it, for a time, from selling the song "Ma Angeline." This order was discharged, as previously stated, on the ground that the song "Dora Dean" was not entitled to the protection of a copyright because of the objectionable word referred to. The defendant therefore contends that it had a right to sell its song "Ma Angeline." But, whatever claim for damages by reason of the restraining order the defendant may have had, it is certainly defeated by the fact, established by a fair preponderance of evidence, that O'Brien pirated the melody of the song "Dora Dean" in pretending to compose the song "Ma Angeline."

An order will be entered dismissing both the bill and cross bill, and that each party pay its own costs.