## BULLARD v. ESPER.

Civ. No. 2399.

District Court, N. D. Texas, Dallas Division.

June 26, 1947.

Carter, Gallagher & Barker, of Dallas, Tex., for plaintiff.

W. J. Bowen and Nathaniel Jacks, both of Dallas, Tex., for defendant.

ATWELL, District Judge.

Copyright provisions under which both defendant, and, the plaintiff, seek certain rights, and, certain protection, were never intended to protect illegality, or, immorality. They are for the purpose of promoting the "progress of science and useful arts." U.S.Const. art. 1, § 8. ence, and useful arts."

The plaintiff's cry for relief is with reference to a picture called, "Human Wreckage." She engaged in the showing of that picture in Dallas. She sold tickets to it. While it was in progress of exhibition, the local officials seized a reel, because of its indecency. That particular reel is described as "Madam Fay's House."

The picture in which the Defendant claims an interest, is called, "The Facts of Life." And, while very much shorter than the plaintiff's picture, deals with sex relations. It starts off with the showing of a naked woman, and, a lecture by another woman, who is so sparsely clad as to have very little concealed, who uses a pointer to point out, as she makes remarks concerning the female picture, calling attention to various portions of the body, from head to foot.

About the only similarity, is that each is quite disgusting, and, the beholder comes away with a feeling of disgust, that parties should be so ostensibly engaged in "public education," to work upon the cupidity of those who might wish to see that sort of exhibition in return for money.

There are many things in life about which we do not talk in decent society, and, yet, everyone knows about them.

The picture that was seized by the police from "Human Wreckage," showed, in "Madam Fay's House," actual sexual relations on a bed, concealing a part of the body, and, concealing the face.

In a decision by Judge Knox, with reference to the "White Cargo," it was suggested that the benefit of such doubt, as might be in the chancellor's mind, should be given to the exhibitor. Following that lead, and, I think, it is a sensible lead, there are scenes which would tend to scare the vicious. Outside of that, there is nothing in either picture that commends itself. Hoffman v. LeTraunik, D.C., 209 F. 375; Martinetti v. Maguire, Fed.Cas.No. 9173, Deady 216; Broder v. Zeno Mauvis Music Co., C.C.Cal., 88 F. 74; Simonton v. Gordon, D.C., 12 F.2d 116.

The obscenity which the law seeks to suppress is that which brings the blush of shame to the cheek of virtue, not to the cheek of vice, not to the wise, because that ability to blush has long since been stifled, it is dead, it does not exist any longer. That is the test of the obscenity which the postal department, and, the interstate commerce carriers are enjoined and bidden to prevent.

So, that is the sort of case we are dealing with. There is nothing in either side that appeals to the chancellor, as indicative of "clean hands."

Now, if we take up the other features, which may be characterized, as particular features of the litigation, plaintiff desired a picture, evidently of this sort. She had an acquaintance with a man by the name of Goldin. Goldin was in New York. He communicated to her that he had found such a picture. That the Cinema Company owned it and the copyright. She furnished the money to buy it. They entered into an agreement among themselves. They used the word "partner" in that agreement. The subsequent relations between Mrs. Bullard, and, Mr. Goldin, show that they were partners. They had accountings. They shared that which was brought in by either one, or, the other. Whether they had very many losses is not quite apparent, except the payment of a criminal fine for the exhibition of the lewd picture. But, at any rate, there were losses, if they may be denominated as such, taken out of the box office gross, so that they received different percentages, as the picture was shown, in different sections of the country.

Some sales were made west of Denver to Sonney. And, another sale was made to Lamsden. The testimony shows that there was an accounting, and, knowledge of those sales, and, a recognition of them. It was not mere joint ownership between Mrs. Bullard and Goldin. It was a partnership. The mere word, "ownership," without the word "partnership," is quite undescriptive of the relation between them.

The relation between Esper and Goldin is pretty much of the same character. They were "birds of a feather." They, like Mrs. Bullard and Goldin, are people of sharp wits. They are business people. Goldin and Esper joined together at the beginning, in different matters, in different ventures. They do not seem to be concerned in "Human Wreckage" in any manner. Esper had his own interest in "Facts of Life," to which I have already alluded. That included the sale of some books, in such theaters as permitted such sales during the showing of "The Facts of Life," or, "Kiss of Death," or, "Thrill of Life."

I think that Mr. Esper owns the copyright on that. And, I think that Mrs. Bullard owns the copyright, together with Goldin, of "Human Wreckage." I do not think either is impinging upon the other. I think that Esper has a right to go forward with his, if he can get by the law; and, I think Mrs. Bullard can go forward with hers, if she can get by the law. I am not going to give either side any recovery. I find against each side.

In the next place, Esper has no interest at this time, because he sold out to Lamsden. He sold out for $1,000, such rights as he secured under the California foreclosure in Mrs. Bullard's prints. But, that foreclosure did not foreclose any of Mrs. Bullard's copyright rights. He merely sold out the print that she knew was there.

What I have said, I find as facts.

As a matter of law, neither party shall recover anything from the other, either upon direct suit, or, as attorney's fees, or, anything else, or, on cross-action, or, cross claim, or, damages.

You will collaborate in the preparation of a simple decree, gentlemen, saving such exception as each may wish. Costs against each.