**ADVISERS, Incorporated, Plaintiff,**

v.

**WIESEN–HART, Inc., Defendant.**

**Civ. A. No. 3476.**

United States District Court
S. D. Ohio, W. D.
April 28, 1958.

Pennie, Edmonds, Morten, Barrows & Taylor, New York City, Murray, Sackhoff & Murray, Cincinnati, Ohio, for plaintiff.

J. Warren Kinney, Jr., Cincinnati, Ohio, for defendant.

DRUFFEL, District Judge.

## Findings of Fact

1. Plaintiff, Advisers Incorporated, is a New York corporation and has its principal place of business in New York City, New York and is, among other things, in the business of writing and producing, printing, publishing and selling catalogues and booklets for use in sales promotions in the retail jewelry business.

2. Defendant, Wiesen-Hart, Inc., is an Ohio corporation having its principal place of business in Cincinnati, Ohio and is also in the business of producing, printing, publishing, distributing, and selling catalogues, booklets, and other similar publications for use in sales promotions in the retail jewelry business.

3. Plaintiff alleges a cause of action in copyright infringement of its "Cash $100 Book" Copyright Registration No. A 120,772, registered January 8, 1954.

4. Defendant filed an answer and counterclaim denying the charge of infringement on various grounds, including the grounds that the accused book was compiled by defendant, at its expense and without knowledge of plaintiff's copyrighted book; that the accused book is an original work of defendant's employees; that the accused book was arrived at honestly and without any aid or help from plaintiff's copyrighted book; that the accused book was not copied from the copyrighted book; that neither defendant nor its employees had knowledge of or access to plaintiff's copyrighted book until after defendant had printed and publicly exhibited the accused books in Chicago and New York in July and early August 1954, respectively.

5. In 1952 Albert Tralins, plaintiff's president, compiled a cash coupon book for use by retail jewelers. The book was devised to stimulate retail business to overcome the inroads made by the "discount house", and to publicize the jewelry products of one of his advertising accounts, Lovebright Diamond Co., Inc., of New York City. The work involved in compiling the Lovebright book involved a great deal of investigation and research in order for Mr. Tralins to arrive at proper discount rates, exclude fair trade items, and to present a schedule which attracted the customer and gave the retailer a reasonable profit. This Lovebright cash coupon book which contained a series of check-type coupons in varying amounts, applicable toward the purchase price of certain enumerated items handled by credit jewelers, was not copyrighted. Prior to the Lovebright book, coupons then in use in the jewelry business gave a straight ten per cent discount on all retail prices and it was these coupons which defendant printed and sold before plaintiff's non-copyrighted Lovebright cash book was devised.

6. Plaintiff printed and distributed over 250,000 of the non-copyrighted Lovebright cash coupon books.

7. In the latter part of 1952, Mr. Tralins devised a cash book which could be used by retail jewelers other than customers of Lovebright Diamond Co., Inc. In order to accomplish this, some jewelry items noted in the Lovebright book had to be eliminated and different items included, and in some instances the amounts of discount were changed. The format of the checks and their wording were changed. This book, known as the "Beautycrest Cash $100 Book" was published on October 7, 1952 and a certificate of registration was obtained from the Register of Copyrights. There is no charge that the accused book infringes upon the "Beautycrest Cash $100 Book".

8. In 1953 Mr. Tralins, at the specific suggestion of users of plaintiff's earlier cash coupon books, compiled a third book, which, in general, combined the check-type discount coupons of the non-copyrighted Lovebright book with illustrations of various types of merchandise handled by credit jewelers on the rear face of the coupons. This third book which was the "Cash $100 Book" which plaintiff registered with the Register of Copyrights on January 8, 1954, Registration No. A 120,772, embodied in general the same discounts for the same items as in the "Beautycrest Cash $100 Book".

9. Through circulation of its books, special advertising matter, various mailings of promotional material, of 20,000 each to retail jewelers, and attendance at jewelry shows, plaintiff sold a total of 280,500 copies of its copyrighted "Cash $100 Book" to the jewelry trade by January 1, 1954. Nearly $23,000 was spent by plaintiff in promoting the sale of these books (T.R. 264, 268–270). By July 1954 plaintiff had sold an additional 130,000 copies of its copyrighted "Cash $100 Book" (T.R. 346).

10. The defendant presented testimony and records in support of its defense that starting in April 1954 defendant, having a copy of the non-copyrighted Lovebright book of plaintiff, compiled the accused book from original sources of information, by the exercise of its own labor and skill, and by the expenditure of its own money.

11. Defendant printed, published, exhibited and offered the accused book for sale in July 1954 at Chicago, Illinois.

12. Defendant exhibited and offered the accused book for sale in early August 1954 at New York City, New York.

13. Defendant's president, Mr. Wiesen, was first shown a copy of plaintiff's book with the copyrighted notice printed thereon later in August 1954, at Gay's in Louisville, Kentucky, when he called upon Gay's for the purpose of soliciting orders for the accused book. Defendant commenced actual shipments of the accused book on about October 15, 1954.

14. A side-by-side comparison of plaintiff's copyrighted book and the accused book discloses that both utilize check-type cash discount coupons in somewhat similar denominations for analogous items of jewelry, and that the reverse sides of the coupons are provided with different illustrations of various types of merchandise handled by credit jewelers.

15. A side-by-side comparison of the Lovebright book, the accused book and plaintiff's copyrighted "Cash $100 Book" shows that where plaintiff changed the format of its checks, art work and copy, defendant adopted the same changes in its checks, art work and copy; where plaintiff eliminated discount checks for certain items, defendant eliminated the same items in compiling its book; where plaintiff added discount checks on other items, defendant added the same checks for the same items; and where plaintiff revised the discounts for items included in the Lovebright book, defendant adopted the plaintiff's revised figures for the same items.

16. In view of the extensive promotion to and wide circulation among the retail jewelry trade of the copyrighted "Cash $100 Book", defendant's position in the retail jewelry promotion business

**834**

of over thirty years standing indicates that defendant had access to the copyrighted work. This access together with the similarity between the accused and copyrighted work warrants the inference the defendant copied plaintiff's copyrighted work whether or not defendant may have also used other sources of information in compiling the accused book.

17. There have been no instances of confusion between the cash coupon books of plaintiff and defendant, however the record indicates that in one instance, when plaintiff refused to sell its cash coupon books to Davis Jewelers, of Gary, Indiana, (because plaintiff had an exclusive deal with another jeweler in that town), Davis Jewelers sought out defendant and ordered the accused books from it.

18. Gay's, of Louisville, Kentucky, who had purchased large quantities of plaintiff's books on an exclusive basis for that city, purchased some five thousand of the accused books from defendant on a similar "exclusive" basis to protect itself against any of its competitors in Louisville obtaining and using defendant's accused "Cash $100.00 Value" book.

19. The facts of record establish that in October 1954, defendant, with actual written notice of plaintiff's copyright proceeded to sell and deliver 23,000 of the accused books which infringed plaintiff's copyright and that the prosecution of this case has necessitated a great amount of work on the part of plaintiff's New York and local counsel. An allowance of attorneys' fees to plaintiff's New York attorneys in the amount of $2,500 and an award of $500 to plaintiff's local attorneys would be fair and reasonable under the circumstances herein.

█ 20. The Court finds as a fact that the plaintiff, "Cash $100 Book" is fraudulent in nature in that it is used for the sole and express purpose of enticing the gullible into those business establishments whose merchandise is advertized in the book under the guise that the book is worth $100 in cash, where in fact the same discounts specified in the book are given to all members of the public in the ordinary course of business.

21. The Court further finds that it was not the intent of Congress to award statutory damages of $1 per copy for books which are thus so fraudulent in nature.

## Conclusions of Law

1. The Court has jurisdiction of the subject matter of the action and of the parties hereto.

█ 2. Plaintiff's "Cash $100 Book" is proper subject matter for copyright protection.

█ 3. Defendant's "Cash $100.00 Value" book infringes upon plaintiff's copyright of its "Cash $100 Book", Copyright Registration No. A 120,772, Class A.

█ 4. Plaintiff is entitled to an injunction permanently enjoining the defendant and its privies from directly or indirectly infringing plaintiff's copyright and for an order directing defendant to deliver and have destroyed copies of its infringing book still in its possession.

█ 5. Because of the difficulty of proving the actual damages to the plaintiff, this Court has discretionary power in lieu of an accounting to grant relief to plaintiff by allowing statutory damages under 17 U.S.C. § 101(b) under which plaintiff is awarded statutory damages amounting to $2,500.

6. Plaintiff is entitled to reasonable attorneys' fees of $3,000 and to the costs of this action.

To all of which defendant notes its exception.