John A. BELCHER, etc., Plaintiff-Appellee,

v.

Irving TARBOX et al., Defendant-Appellant.

John A. BELCHER, etc., Plaintiff-Cross Appellant,

v.

Irving TARBOX et al., Defendant-Cross Appellee.

Nos. 72-1266, 72-1415.

United States Court of Appeals, Ninth Circuit.

Nov. 7, 1973.

Howard R. Harris (argued), National City, Cal., for appellant.

Neil F. Martin (argued), San Diego, Cal., Robert M. Angus, Burnsville, Minn., for appellee.

Before DUNIWAY and WALLACE, Circuit Judges, and SCHNACKE,* District Judge.

SCHNACKE, District Judge:

Plaintiff and defendant [1] are engaged in the business of publishing handicapping systems for betting on horse races. Plaintiff issues his formulations separately; defendant periodically issues a magazine or book containing reprints of a number of such formulations. Six of plaintiff's were so reprinted, and plaintiff brought this action for infringement of his copyrights, trademarks and trade names. The court below, as to five of the six, found the copyrights valid and infringed and awarded plaintiff injunctive relief and damages. We affirm this portion of the judgment. The sixth is discussed subsequently.

Defendant's primary contention is that the works were not entitled to copyright protection since they, and the advertising material associated with them, fraudulently represented to the public that users of the system described could beat the horses; that the author had in fact done so successfully; and that, as to some of the systems, they had been developed by professional mathemati-

---

* Hon. Robert H. Schnacke, United States District Judge, Northern District of California, sitting by designation.

1. Their positions in the court below. Each has appealed portions of the judgment.

cians or with the aid of computer equipment, and payments or awards had been made for them in excess of those shown by the facts. The evidence, on the contrary, indicated that handicapping systems, including plaintiff's, are constructed after the fact and upon the unstated assumption that fortuitous patterns exhibited by selected data will be repeated. At best, the evidence indicated, such systems reduce bettors' losses, presumably by restricting the number of bets they place. In addition, plaintiff had not profited by the use of the systems, except as he had sold them to the public, and the evidence failed to substantiate the other representations made.

It is arguable that the trial judge impliedly found that the materials copyrighted in the first five copyrights were not fraudulent. In his findings of fact he does not refer to the defense of fraud in relation to these five, while in his finding of fact as to the sixth he finds fraud. In his conclusions of law he finds that there are no defenses to the infringement of the five. Because at the trial fraud was made an issue as to these five, it could be argued that this is a finding that there is not such fraud. On the other hand, under Rule 52(a), F.R.Civ.P., the court is required to find the facts specially. If fraud in the five copyrighted items is a material defense, the trial judge should have made specific findings on the subject because there was substantial evidence offered in support of this defense. However, if fraud is not a defense, the court's failure to make findings on that subject is immaterial. We therefore consider whether fraud is a defense.

Is false and fraudulent material entitled to copyright protection or does the clean hands doctrine preclude it? There is scant authority. In Stone & McCarrick, Inc. v. Dugan Piano Co., 220 F. 837 (5th Cir. 1915), the court, applying an analogy from trademark cases, invoked the doctrine of clean hands to affirm the dismissal on other grounds of a copyright action.[2]

We think that decision unsound. There is nothing in the Copyright Act to suggest that the courts are to pass upon the truth or falsity, the soundness or unsoundness, of the views embodied in a copyrighted work. The gravity and immensity of the problems, theological, philosophical, economic and scientific, that would confront a court if this view were adopted are staggering to contemplate. It is surely not a task lightly to be assumed, and we decline the invitation to assume it.[3]

Defendant also urges that copyright protection should be denied plaintiff because his works contain extracts from past performance records originally published in the *Daily Racing Form*, a copyrighted publication. Section 7 of the Copyright Act, 17 U.S.C. § 7, deals with the copyright of so-called composite works containing within them material copyrighted by another or in the public domain. In stated circumstances (including consent of the copyright holder), the new matter is subject to copyright. However, there is no provision denying copyright protection to new matter in composite works made up in part of matter copyrighted by another, without the holder's consent, or permitting a third person such as defendant to copy with impunity the entire composite work, thereby infringing both copyrights.[4] Since the proprietors of *Daily Racing Form* have not complained, so far as appears, we do not reach the question whether the reprinting of their past performance charts as historical records rather than current news constitutes an infringement.

2. *Contra*, Advisers, Incorporated v. Wiesen-Hart, Inc., 161 F.Supp. 831 (S.D.Ohio 1958) ; see Deutsch v. Felton, 27 F.Supp. 895 (E.D.N.Y.1939) ; 1 Nimmer, Copyright (1972), § 36 at 146.28. Edward Thompson Co. v. American Law Book Co., 122 F. 922 (2nd Cir. 1903), is easily distinguishable.

3. Copyright protection restricts permissible publication. We fail to see what public policy would be served by eliminating this restriction in the case of fraudulent matter and permitting it to be reprinted and circulated freely.

4. Defendant evidences no desire to reproduce the *Daily Racing Form* material by itself.

Other arguments advanced by defendant are without merit.

Plaintiff has cross-appealed from the portion of the judgment below denying enforcement of his rights in the sixth publication entitled "Two Professional Methods From Computimeter Co." The trial court found that the plaintiff was owner of the copyright on the composition and the lawful owner of "Computimeter" as a registered trademark, but refused enforcement of either, because of findings that the composition and its attendant advertising were designed to deceive the public by misrepresenting the origin of the composition, viz., that it was the product of computer research and analysis, when in fact no computer was used.

The court concluded that it would not protect either the copyright or the trademark of a composition put forth with deception and misrepresentation.

For the reasons we have given in affirming the balance of the judgment, it is our view that as to the copyright, the holding was erroneous. We therefore remand solely for the purpose of ascertaining the damage, if any, sustained by plaintiff as a result of the copyright infringement.

The trial court may also consider the allowance of additional attorneys' fees in connection with both appeals. 17 U.S.C. § 116; Serbin, Inc. v. Key West Hand Print Fabrics, Inc., 381 F.2d 735 (5th Cir. 1967); Overman v. Loesser, 205 F. 2d 521, 524 (9th Cir. 1953).

Affirmed in part and reversed and remanded in part for further proceedings as indicated above.

WALLACE, Circuit Judge (concurring and dissenting):

I dissent only from that portion of the majority opinion which holds that fraudulent material is entitled to copyright protection and chooses not to follow Stone & McCarrick, Inc. v. Dugan Piano Co., 220 F. 837 (5th Cir. 1915), viewing that decision as unsound. I disagree and think that the departure from Stone & McCarrick is unfortunate. The issue there and here is whether the court, applying equitable principles mandated by 17 U.S.C. § 112,[1] should enjoin the infringement of copyrighted material which is deceptive and fraudulent. The Fifth Circuit denied the protection of a court of equity for copyrighted materials (advertisements) which were fraudulent. The court stated that "the law should extend its protection [only to those advertisements] that speak the truth, and certainly not to that class of advertising matter the effect of which is to mislead and deceive the public." 220 F. at 841. The court reasoned that "if the plaintiff makes any material false statement in connection with the property he seeks to protect [via the copyright laws], he loses, and very justly, his right to claim the assistance of a court of equity." 220 F. at 842 (quoting other cases).

In Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 494, 62 S.Ct. 402, 86 L.Ed. 363 (1942), Stone & McCarrick was cited with approval. Morton Salt denied relief in a patent infringement case because of the inequitable conduct of the patentee. After referring to misrepresentation as an equitable defense in a trademark infringement case, the Court referred to a similar doctrine for copyright cases. The Court then stated:

The patentee, like these other holders of an exclusive privilege [i. e. trade-

1. While the copyright act does not state that courts are to pass upon the truth or falsity of the views in copyrighted material, 17 U.S.C. § 112 provides that in granting relief to vindicate rights under the copyright act, the courts shall grant injunctions "according to the course and principles of courts of equity." In the instant case, injunctive relief was requested and granted.

In 1958, the Attorney General of the United States wrote:

[S]ome of the opinions bearing on the question appear to be based upon an exercise of equity discretion rather than upon copyright law. Bullard v. Esper, supra [72 F.Supp. 548, 549 (N.D.Tex.1947)]; Richardson v. Miller, 20 Fed.Case 722 (Case No. 11,791, C.C.D.Mass.1877); see also Stone & McCarrick Inc. v. Dugan Piano Co., 220 Fed. 837 (C.A.5, 1915). 41 Opinions of the Att'y Gen. 396, 400 n. 4 (Dec. 18, 1958).

mark and copyright holders] granted in the furtherance of a public policy, may not claim protection of his grant by the courts where it is being used to subvert that policy.

314 U.S. at 494, 62 S.Ct. at 406.

As a general principle, courts of equity may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest. A copyright is in the nature of a privilege. Stuff v. La Budde Feed & Grain Co., 42 F.Supp. 493, 497 (E.D.Wisc. 1941). Such a privilege should not be abused by granting copyright protection to material which is used to defraud the public. Further, the copyright law is intended "to grant valuable, enforceable rights [in order] 'to afford greater encouragement to the production of literary works of lasting benefit to the world.'" Washingtonian Publishing Co. v. Pearson, 306 U.S. 30, 36, 59 S.Ct. 397, 400, 83 L.Ed. 470 (1939) (footnotes omitted). I fail to see how extending copyright protection to fraudulent material will help advance the literary arts and produce "literary works of lasting benefit to the world."

The majority opinion questions what public policy would be furthered by permitting fraudulent matter to be reprinted and circulated freely. Majority opinion, fn.3. However, on the other side of the coin, I cannot subscribe to the apparent majority assumption that not permitting reproduction of fraudulent material will advance the public interest. The public interest is to protect members of the public from being defrauded. While granting copyright protection of fraudulent material will assure that only one person will defraud members of the public with a single fraudulent scheme, rather than several defrauders using the same scheme, it will not insure that any fewer members of the public will be defrauded by this single scheme. By allowing copyright protection to such material, the law is not only condoning fraud but is placing its power, endorsement and support behind fraudulent works. Persons who heretofore have never composed fraudulent literature can do so[2] and seek solace in the law as the protector of their copyrighted fraud. I submit that this is detrimental to our legal system and not in the public interest.

The majority fears that by adjudicating the issue of fraudulent content our courts would be faced with problems "staggering to contemplate." I assume the majority is concerned with (1) possible increased burden on the courts in terms of the number of challenges to copyrights; and (2) possible problems in defining judicial standards on which to judge fraudulent material.

The first possible problem is based on an assumption I am not ready to make. If we were to hold that fraudulent material is not entitled to the protection of the copyright laws, does it necessarily follow that there will be such barrage of challenges to copyrights on the ground of fraudulent content that would create staggering burdens on the court? Indeed, since Stone & McCarrick was decided in 1915, we have found only one case which has directly involved fraudulent content in copyrighted materials.[3]

The second possible problem might be in defining what is fraudulent material. Even assuming that such judicial standards would be difficult to formulate, we should not, for that reason, fail to do so. However, I fail to see the gravity and

2. Indeed, the majority opinion may give them an incentive to do so.

3. In Advisers, Inc. v. Wiesen-Hart, Inc., 161 F.Supp. 831 (S.D.Ohio 1958), the district court found that a coupon book advertised as worth $100 in discount sales was used to entice the gullible into business establishments whose merchandise was advertised in it. The court found the book was fraudulent because all members of the public were given the same discounts, but nevertheless held that it was a proper subject for copyright protection. However, the court found that it was not the intent of Congress to award statutory damages of $1 per copy for books which were so fraudulent. I disagree with the case. The copyright should not have been upheld.

immensity of dealing with fraud. We frequently have fraud cases before us and should not decline to hear copyright cases where an allegation of fraud is presented.

Finally, the majority opinion points out that there is nothing in the copyright act to suggest that courts are to pass upon the truth or soundness of the views in a copyright work. But that does not necessarily answer the question. The same act makes no provision for courts to pass on the content of allegedly immoral, illegal or obscene subject matter. Nevertheless, these defenses have often been accepted by the courts. I Nimmer, Copyright (1972), § 36 at 146.- 28. *See* 41 Opinions of the Att'y Gen. 396, 399 (Dec. 18, 1958); Rogers, Copyright and Morals, 18 Mich.L.Rev. 390 (1920); Comment, Immorality, Obscenity and the Law of Copyright, 6 S.Dak. L.Rev. 109 (1961).

I would affirm the entire case including the trial court's apparent conclusion that equity will not provide copyright protection to fraudulent material.