JARTECH, INC., Anatuna, Inc., Cinema 7, Inc., and Mooks, Inc., all California Corporations, Plaintiffs-Appellants,

v.

James J. CLANCY, Gordon Bricken, James E. Ward, David L. Brandt, David F. Ortiz, Defendants-Appellees.

JARTECH, INC.; Anatuna, Inc.; Cinema Seven, Inc.; and Mooks, Inc., all California Corporations, Plaintiffs-Appellants,

v.

James J. CLANCY; Gordon Bricken; James E. Ward; David L. Brandt; David F. Ortiz, Defendants-Appellees.

James J. CLANCY, Gordon Bricken, James E. Ward, David L. Brandt, David F. Ortiz, Counter-Claimants/Appellants,

v.

JARTECH, INC., Anatuna, Inc., Cinema 7, Inc., and Mooks, Inc., all California Corporations, James Mitchell, Artie Mitchell, Mitchell Brothers Film Group, a general partnership, Counter-Defendants/Appellees.

Nos. 79–3087, 80–5010 and 80–5016.

United States Court of Appeals,
Ninth Circuit.

Jan. 25, 1982.

Meredith Bradford, San Francisco, Cal., for Jartech.

James J. Clancy, Sun Valley, Cal., argued, for Clancy; David A. Depew, Alhambra, Cal., on brief.

Before HUG and SKOPIL, Circuit Judges, and MUECKE,* Chief District Judge.

MUECKE, Chief District Judge:

This series of appeals raises for the first time in this circuit the issue of whether obscenity is a defense to a copyright infringement claim. This court has also been asked to determine whether use of copies of a copyrighted work by a local government in a nuisance abatement action is within the fair use exception to the copyright laws. Review is also sought of the trial court's award of attorney's fees upon the finding that the initiation of the suit was vexatious, and its dismissal of a counterclaim which sought a declaration that the copyrighted movies involved herein were obscene as a matter of law.

## BACKGROUND

James and Artie Mitchell are the producers, distributors and displayers of adult movies. The plaintiffs below (hereinafter, "Mitchells"), are entities, controlled by the Mitchells, which perform these various functions. The defendants in the trial court were attorney James Clancy, and four individual members of the Santa Ana City Council (hereinafter, collectively referred to as "the Council").

On January 19, 1976, Clancy entered into a contract with the City of Santa Ana to act as special counsel to the city for the drafting, adoption and implementation of a public nuisance abatement ordinance aimed at ridding the city of its adult movie theatres. Subsequently, the Council adopted a city ordinance which declared that certain cinematic depictions of sexual activities constituted a nuisance. Later, an amendment to the ordinance provided a procedure for the abatement of such nuisances. On October 26, 1976, the Council adopted a resolution declaring a Mitchell Brothers' theatre to be a nuisance for exhibiting such

* Honorable C. A. Muecke, Chief Judge, United States District Court for the District of Arizo-na, sitting by designation.

films. The City Attorney was ordered to abate the nuisance and all of the Mitchells' licenses and permits were revoked.

On October 12, 1976, the Mitchells filed a suit against the Council for copyright infringement of five properly copyrighted motion pictures. The complaint alleged that an agent of the Council surreptitiously entered their theatre in Santa Ana and employed a process perfected by Clancy, whereby photographs were taken every few seconds of the visual screen images while a tape recorder recorded the entire soundtrack of the films. The photographs were subsequently reproduced in small prints of fifty per page, with the dialogue from the tape recordings printed underneath. These materials were used by the Council in determining that the theatre was a nuisance and in the subsequent abatement proceedings against the Mitchell theatre.

The Mitchells' copyright infringement suit proceeded to trial and on December 14, 1978, the jury returned special verdicts which found that: "(1) each defendant was responsible for the copying of five movies to which the plaintiffs held a copyright; (2) the use made by the defendants of the copy of the films was a fair use; (3) each film was obscene; and, (4) the profits realized by the defendants as a result of the infringement of the copyright for each film was 'none.'"

On June 29, 1979, the trial court considered a counterclaim filed by the Council, which sought a declaratory judgment that the five pictures were obscene as a matter of law and should be seized as contraband. The court found that the action had been rendered moot by the determination made in the case-in-chief and that there no longer existed a case or controversy between the parties. Upon these findings, the court concluded that it lacked jurisdiction to render a declaratory judgment on the issue of the obscenity *vel non* of the films, that it lacked the jurisdiction to authorize the forfeiture of materials found to be outside the copyright laws, and that federal copyright law made no specific provision for the exclusion of "immoral articles" or "obscene matter" from its protection.

On October 31, 1979, the trial court entered judgment for the Council and against the Mitchells for $23,157.11 in attorney's fees. This judgment was based upon the conclusion that the copyright infringement suit brought by the Mitchells was vexatious and brought to harass the defendants. The court noted that essentially the same plaintiffs had unsuccessfully tried the issue in the United States District Court in Texas. The court felt that the timing of the suit suggested that it may have been instituted to intimidate the Council members in their consideration of the nuisance action pending against the plaintiffs. The court also questioned the plaintiffs' intent in bringing the suit against some, but not all, of the Council members in their individual capacities and in naming special counsel Clancy as a defendant, but not including the actual agent who made the film and sound reproductions.

From these actions, the Mitchells have appealed the special verdicts returned by the jury, finding that obscenity is a defense to a copyright infringement action and that the Council's use was a fair use. They have also appealed the award of attorney's fees. The Council has appealed the court's dismissal of its counterclaim.

## THE COPYRIGHTABILITY OF OBSCENITY

Throughout pretrial proceedings and at trial, the Mitchells unsuccessfully asserted that obscenity was not a valid defense to a claim of infringement.

The Constitution authorizes the granting of copyrights "[t]o promote the Progress of Science and useful Arts," U.S.Const. art. 1, § 8, cl. 8. In response, Congress has authorized the copyrighting of "original works of authorship." 17 U.S.C. § 102 (1976). The Council argues that Congress may not grant copyright protection to obscenity as that would defy the constitutional mandate of promoting the progress of science and useful arts. The Mitchells assert that Congress has reasonably sought to effectuate the constitutional directive by enacting a content-free statute.

This Court, in considering the copyright-ability of fraudulent materials in *Belcher v. Tarbox*, 486 F.2d 1087 (9th Cir. 1973), stated:

> There is nothing in the Copyright Act to suggest that the courts are to pass upon the truth or falsity, the soundness or unsoundness, of the views embodied in a copyrighted work. The gravity and immensity of the problems, theological, philosophical, economic and scientific that would confront a court if this view were adopted are staggering to contemplate. It is surely not a task lightly to be assumed, and we decline the invitation to assume it. 486 F.2d at 1088.

The *Belcher* decision was relied upon by the Fifth Circuit in rejecting obscenity as a defense to copyright infringement in a case which also involved the Mitchells. *Mitchell Brothers Film Group v. Cinema Adult Theatre*, 604 F.2d 852 (5th Cir. 1979), *cert. denied*, 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601 (1980). That opinion traced the history of copyright laws, and in it the Fifth Circuit observed that any time a content-based statute had been passed by Congress, it has shortly thereafter been replaced with a content-free law.

The leading treatise on copyright has called the Fifth Circuit's *Mitchell Brothers* case "the most thoughtful and comprehensive analysis of the issue." Nimmer on Copyright, § 2.17, p. 2–194.2 (1980). Nimmer also considers *Mitchell Brothers* to represent the prevailing view on this issue. *Id.* While the case dealt with the now repealed Copyright Act of 1909, specifically 17 U.S.C. § 4, the language of the present statute requires the same interpretation. Prior law referred to "all writings of an author," while the current statute employs the similar phrase "original works of authorship." 17 U.S.C. § 102 (1976).

Pragmatism further compels a rejection of an obscenity defense. Under the dictates of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), obscenity is a community standard which may vary to the extent that controls thereof may be dropped by a state altogether. *Paris Adult Theatres I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *United States v. 2,200 Paper Back Books*, 565 F.2d 566, 569–70 (9th Cir. 1977). Acceptance of an obscenity defense would fragment copyright enforcement, protecting registered materials in a certain community, while, in effect, authorizing pirating in another locale.

## FAIR USE

■ In returning one of its special verdicts, the jury found that the use made by the Council of the copies of the films was a "fair use." Fair use is a statutory defense to copyright liability. 17 U.S.C. § 107.

In its presentation to the jury, the Council had argued that because it had not commercially exploited the Mitchells' copyright, but had used it in a nuisance abatement proceeding, its use was within the safe harbor of fair use. The Mitchells have challenged the jury's determination of fair use and the trial court's instruction on the defense.

Recently, this Court closely scrutinized the fair use doctrine. *Universal City Studios, Inc. v. Sony Corp. of America*, 659 F.2d 963, at 972–974 (9th Cir. 1981). Therein, it was determined, *inter alia*, that the copying of telecasts of copyrighted audiovisual materials by owners of video recorders in their homes for their own private noncommercial use was an infringement of the copyright laws. Specifically, the *Sony* Court found that such copying was not a fair use.

In coming to this conclusion, the Court first examined whether the alleged infringers reproduced the work for its intrinsic purpose. In other words, did the alleged infringers copy the material to use it for the same purpose that the copyright holder intended his audience to use or enjoy the work.

The *Sony* opinion then examined 17 U.S.C. § 107, which illustratively sets forth the parameters of fair use. Section 107 directs the consideration of: (1) the purpose and character of the use, including whether such use is commercial or nonprofit; (2) the

nature of the copyrighted work; (3) the amount of copying involved; and, (4) the effect of the copying on the market of the copyrighted work. *Id.*

In *Sony*, this Court found that the use made by the alleged infringers was the same intrinsic use to which the copyright holders expected protection from unauthorized use. Such a finding is strong indicia of finding no fair use. As this conclusion was not contradicted by the statutory analysis, the Court found no fair use and an infringement of the law.

In this case, the use to which the alleged infringers put the copy is not an intrinsic use. The alleged infringers made abbreviated copies of the films, not for subsequent use and enjoyment, but for evidence to be used in the nuisance abatement proceedings. The suggestion of fair use made by the finding that the copies were not made for intrinsic use is not contradicted by application of Section 107's criteria. While the statutory standards are not precisely applicable to the facts at bar, because there was evidence that the Council's use was neither commercially exploitive of the copyright, nor commercially exploitive of the copyright holder's market, the jury's verdict is certainly supported by substantial evidence.

■ The district court instructed the jury on fair use, essentially in terms of the Section 107 criteria. The propriety of giving the fair use instruction may have been a closer question were it not for the fact that the record reveals that the Mitchells proffered or at least acquiesced in the giving of the fair use instruction. Having failed to object to the giving of the instruction, the Mitchells may not now challenge the instruction as erroneous. Rule 51, F.R.Civ.P.

### ATTORNEY'S FEES

■ Section 505 of the Copyright Act and its predecessor which was in effect at the time of this suit, Section 116, authorize the award of attorney's fees to the prevailing party in a lawsuit. 17 U.S.C. § 505 (1976); 17 U.S.C. § 116 (repealed). When attorney's fees are awarded to a prevailing

defendant, the award represents a penalty for the institution of a frivolous or bad faith suit. *Edward B. Marks Music Corp. v. Continental Record Co.*, 222 F.2d 488, 493 (2d Cir. 1955) *cert. denied*, 350 U.S. 861, 76 S.Ct. 101, 100 L.Ed. 764 (1955); *Overman v. Loesser*, 205 F.2d 521, 524 and n. 9 (9th Cir. 1953).

■ The court based its award of fees to the defendants on the grounds that the same issue had been decided against the plaintiffs in a recent district court case in Texas, and that the chronology of events led the court to believe that the suit was instituted for purposes of intimidation.

The Texas district court decision has since been reversed by the Fifth Circuit. *Mitchell Brothers Film Group v. Cinema Adult Theatre*, 604 F.2d 852 (5th Cir. 1979), *cert. denied*, 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601 (1980). While the district court decision will not be reversed in this case, the Mitchells' prosecution of obscenity as a defense was not only not frivolous, but their position has ultimately been accepted. Furthermore, the Mitchells have offered explanations for their prosecution of this suit, which, in the opinion of this court, reflect a sincere interest in the settlement of close legal questions. The plaintiffs initiated this suit only after defendants had reproduced and used their registered properties in a manner which was arguably illegal.

In light of the foregoing, the trial court's award of attorney's fees is reversed.

### *PER SE* OBSCENITY

■ The Council has appealed the dismissal of their counterclaim. The counterclaim sought a determination that the movies in question were "obscene *per se*" and urged the court to order the seizure and destruction of all prints of the films.

The court, with a verdict that obscenity constituted a defense to copyright infringement, determined that there was no longer a controversy between the parties and dismissed the counterclaim as being moot. The court made the alternate conclusions

that the complaint failed to state a claim upon which relief could be granted and that the court was without the jurisdiction to order seizure and destruction of such materials.

While the decision below, that obscenity is a valid defense is incorrect, the Council's activities have been immunized by the jury's finding that their's was a fair use. As a consequence, the obscenity *per se* issue is still moot.

Additionally, the trial court's handling of the merits was entirely correct. There is nothing in the Copyright Act to suggest that the Court has the authority to order forfeiture and destruction of obscene materials. *See* 17 U.S.C. §§ 501–10, Copyright Infringement and Remedies. Furthermore, the Council's request that the movies be found obscene as a matter of law flies in the face of settled Supreme Court case law which unquestionably establishes this as a factual determination. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).

## CONCLUSION

The decision of the trial court, finding the Council not liable for a copyright infringement, is affirmed. While this court does not agree that obscenity constitutes a defense to a copyright claim, the jury's verdict that the use of the copyrighted materials is supported by substantial evidence.

The dismissal of the Council's counterclaim was also appropriate and is affirmed. The award of attorney's fees to the Council is reversed.

AFFIRMED in part; REVERSED in part.