**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DREAM GAMES OF ARIZONA, INC.;
AMERICAN SOFTWARE DEVELOPMENT
COMPANY, INC.,
              *Plaintiffs-Appellees,*

              v.

PC ONSITE; CASEY HAGON,
              *Defendants-Appellants,*

              and

AFFORDABLE VIDEO SYSTEMS, LTD.;
GARLAND PIERCE; FRANK DIANA
CITY ENTERTAINMENT,
              *Defendants,*

              v.

PAUL PEREZ,
              *Third-party-defendant.*

No. 07-15847

D.C. No.
CV-03-00433-PHX-
ROS

3987

DREAM GAMES OF ARIZONA, INC.;
AMERICAN SOFTWARE DEVELOPMENT
COMPANY, INC.,
                    *Plaintiffs-Appellants,*

                    v.

PC ONSITE; CASEY HAGON,                    No. 07-15919
                    *Defendants-Appellees,*
                                           D.C. No.
                    and                    CV-03-00433-PHX-
                                           ROS
AFFORDABLE VIDEO SYSTEMS, LTD.;
GARLAND PIERCE; FRANK DIANA               OPINION
CITY ENTERTAINMENT,
                    *Defendants,*

                    v.

PAUL PEREZ,
          *Third-party-defendant.*

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
November 20, 2008—San Francisco, California

Filed April 2, 2009

Before: William C. Canby, Jr. and Kim McLane Wardlaw,
Circuit Judges, and Richard Mills,* District Judge.

Opinion by Judge Wardlaw

*The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

**COUNSEL**

Ray K. Harris, Esq., Fennemore Craig, P.C., Phoenix, Arizona, for defendants-appellants/appellees PC Onsite.

Marvin A. Glazer, Esq., Cahill, Von Hellens & Glazer P.L.C., Phoenix, Arizona, for plaintiffs-appellees/appellants Dream Games of Arizona, Inc.

**OPINION**

WARDLAW, Circuit Judge:

Dream Games of Arizona ("Dream Games") prevailed in its lawsuit against PC Onsite for copyright infringement of "Fast Action Bingo," an electronic video bingo game, and was awarded statutory damages. We must decide whether (1) the district court properly allowed the jury to see unprotectable elements of the game without identifying the protectable elements; (2) the jury should have been allowed to hear evidence that Fast Action Bingo was operated illegally in two states; (3) statutory damages were available to Dream Games despite the illegal operation; and (4) the district court erred in dismissing claims against PC Onsite's majority owner for lack of evidence of direct infringement. We have jurisdiction, 28 U.S.C. § 1291, and we affirm the district court's rulings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Dream Games, a corporation that creates, designs, develops, licenses, and sells electronic video bingo games, developed an electronic video game called Fast Action Bingo. In March 2002, Dream Games entered negotiations with PC Onsite, a company that licenses, distributes, and sells computer hardware and software, regarding the possibility of PC Onsite performing software upgrade work on Fast Action Bingo. When PC Onsite was given the original source code for Fast Action Bingo, the two companies signed a third party source code nondisclosure agreement, which listed Dream Games as the licensor and PC Onsite as the licensee, and provided that Dream Games would retain all intellectual property rights in the proprietary information provided to PC Onsite. The agreement prohibited PC Onsite from assigning, selling, distributing, licensing, or otherwise transferring the proprietary information.

PC Onsite created a new version of Fast Action Bingo, called "Fast Action Bingo II." In a September 2002 meeting

attended by PC Onsite representatives Casey Hagon, president, and Garland Pierce, co-founder and majority owner, PC Onsite presented Fast Action Bingo II to Dream Games. Negotiations broke down at the meeting, and though the parties made continued attempts at negotiation, the futility of further efforts soon became clear to PC Onsite. Immediately after the breakdown of negotiations, PC Onsite created "Quick Play Bingo I"—an electronic video bingo game that would compete with Fast Action Bingo—on the basis of the product that PC Onsite developed for Dream Games. On November 27, 2002, Dream Games registered a copyright, No. TX 5-622-656, for the Fast Action Bingo I source code.

In December 2002, Pierce and Hagon jointly presented a demonstration of Quick Play Bingo I to City Entertainment, a company that operates bingo parlors. PC Onsite and City agreed to install and operate Quick Play Bingo I in two bingo parlors in Utah and three bingo parlors in Wyoming. City had previously offered Fast Action Bingo at the two Utah parlors, and at one of the Wyoming parlors. Thus, Fast Action Bingo and Quick Play Bingo directly competed with each other in City's bingo parlors between January 2003 and March 2003.

Dream Games and American Software Development Company, a licensor of Fast Action Bingo, filed a complaint in the United States District Court for the District of Arizona, alleging copyright infringement under 17 U.S.C. § 501, common law breach of contract, and unjust enrichment, and seeking injunctive relief and damages. Specifically, Dream Games alleged that PC Onsite, Casey Hagon, and Garland Piece (collectively, "PC Onsite"),[1] "having full knowledge of the copyright rights of Dream Games, have infringed Dream Games'

---

[1]Paul Perez, president of Dream Games, was later named a third party defendant. Other defendants Affordable Video Systems, a licensed distributor of both Fast Action Bingo and Quick Play Bingo, Frank Diana, and City Entertainment LLC, were dismissed by stipulation before summary judgment.

copyrights by manufacturing, displaying, distributing, . . . selling, [and] licensing . . . an electronic video bingo game known as 'Quick Play Bingo.' " Dream Games obtained a preliminary injunction against PC Onsite, enjoining it from infringing Dream Games's copyright.

A six day jury trial began on November 7, 2006. During trial, PC Onsite moved for Judgment as a Matter of Law ("JMOL"), arguing that Garland Pierce was not liable for copyright infringement because he did not directly distribute Quick Play Bingo to the public or participate in its development, and that Dream Games was not entitled to damages because Fast Action Bingo was operated illegally. During oral argument on the motion, Dream Games argued for the first time that Garland Pierce was secondarily liable for infringement. The district court granted judgment as a matter of law in favor of Pierce and dismissed him from the case. The court further ruled that Dream Games could not recover actual damages for Fast Action Bingo's lost profits because the game was offered illegally in Utah and Wyoming, but that Dream Games was entitled to recover statutory damages to be determined by the jury.

The jury found PC Onsite and Hagon liable for willful copyright infringement. It awarded $25,000 to Dream Games in statutory damages. Final judgment was entered on March 30, 2007, in favor of Dream Games. Dream Games subsequently moved to amend the judgment for an error correction and to enter a permanent injunction. It also filed a motion for a new trial on Pierce's liability for inducement. On May 2, 2007, the district court amended its judgment to correct the clerical error and to order a permanent injunction, and denied Dream Games's motion for a partial new trial.

PC Onsite timely appeals. Dream Games and Affordable Video Systems cross-appeal the district court's denial of Dream Games's motion for a partial new trial on Pierce's liability.

## II.   JURISDICTION AND STANDARD OF REVIEW

The district court's jurisdiction was based on 28 U.S.C. §§ 1331, 1338(a) and 1367(a). We have jurisdiction under 28 U.S.C. § 1291 from a final judgment that disposes of all claims with respect to all parties.[2]

We review a district court's evidentiary ruling for abuse of discretion. *See Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004). Appellant must also show "that the error was prejudicial." *Id.* "We review a district court's formulation of civil jury instructions for an abuse of discretion," and "[w]e review de novo whether a jury instruction misstates the law." *Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 784 (9th Cir. 2006). A denial and a grant of a motion for a judgment as a matter of law are both reviewed de novo. *See Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006).

---

[2]We reject PC Onsite's argument, set forth in a footnote in its reply brief, that the district court lacked jurisdiction to hear this case because Dream Games's deposit with the copyright office represents only eighty percent original work. A certificate of registration raises the presumption of copyright validity and ownership. *See Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075-76 (9th Cir. 2000). In this case, the Copyright Office was informed by an email from Dream Games's counsel, after the Certificate of Registration issued, that the deposited copy represented eighty percent original work and that Dream Games no longer had access to the original work. The Copyright Office then expressly granted Dream Games relief from the deposit requirement, as permitted under 37 C.F.R. section 202.20(d). Therefore, Dream Games's Certificate of Registration was valid and meets the jurisdictional and statutory damages requirements of the Copyright Act. For the same reason, we reject PC Onsite's remaining arguments based on the percentage of original work submitted to the Copyright Office.

## III.  DISCUSSION

### A.  Evidence of Unprotectable Elements Before the Jury

**[1]** Because "copyright protects only an author's expression of an idea," *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 207 (9th Cir. 1988), "elements of expression that necessarily follow from an idea, or . . . expressions that are as a practical matter, indispensable or at least standard in the treatment of a given idea" are not protected, *id.* at 208 (alteration and internal quotation marks omitted). We have held, however, that a claim of copyright infringement can be based on infringement of a combination of unprotected elements. *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994). "It is well settled that a jury may find a combination of unprotect[a]ble elements to be protect[a]ble . . . because 'the over-all impact and effect indicate substantial appropriation.' " *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1169 (9th Cir. 1977), *superseded on other grounds by* 17 U.S.C. § 504(b)). To allow the possibility of such a finding, the jury must be allowed to see the complete work. *Apple Computer* and its progeny do, however, require that the unprotected elements be identified to the jury. *See, e.g.*, *Apple Computer,* 35 F.3d at 1446 ("[T]he unprotectable elements have to be identified, or filtered, before the works can be considered as a whole.").

### 1.  District Court's Refusal to Limit Evidence To Protectable Elements

**[2]** PC Onsite argues that the district court abused its discretion in allowing the jury to see the unprotectable elements of Fast Action Bingo.[3] Unprotectable elements such as Bingo

---

[3]PC Onsite properly raises this objection on appeal. Federal Rule of Evidence 103(a) provides that "[o]nce the court makes a definitive ruling

cards and game function buttons, i.e., "Log Out," were introduced into evidence as part of the complete printouts of Fast Action Bingo screen displays. Because it is appropriate for the jury to see unprotected elements of a copyrighted work so that it may assess whether the combination of such elements warrants protection, the district court did not abuse its discretion in allowing into evidence complete Fast Action Bingo screen displays that include unprotectable elements.

### 2.  *Identification of Protectable Elements in Jury Instructions*

PC Onsite argues that the district court erred by failing to identify in the jury instructions the specific elements of Fast Action Bingo that are protected by copyright. "[P]rejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered." *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1092 (9th Cir. 2007) (internal quotation marks omitted).

---

on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal." "When the ruling is definitive, a renewed objection . . . at the time the evidence is to be offered is more a formalism than a necessity." Fed. R. Evid. 103, advisory committee's note to 2000 Amendment. We have held that when the "substance of the objection has been thoroughly explored during the hearing on the motion in limine, and the trial court's ruling permitting introduction of evidence was explicit and definitive, no further action is required to preserve for appeal the issue of admissibility of that evidence." *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986); *see also Sheehy v. S. Pac. Transp. Co.*, 631 F.2d 649, 652-53 (9th Cir. 1980) (finding that objection during pretrial arguments alone was adequate to preserve the right to appeal). PC Onsite argued in its motion in limine that Dream Games "should be precluded from presenting any evidence or testimony regarding infringement of screen displays unless Plaintiffs identify the specific protected elements in each screen." The district court was sufficiently informed as to PC Onsite's grounds for objection and denied that motion in a definitive ruling. Therefore, PC Onsite's objection to screen displays that contain unprotectable elements has been preserved for appellate review.

PC Onsite relies primarily on *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989), to support its argument that the jury instructions did not fairly and correctly cover the applicable law. In *Harper House*, the district court "refused to give defendants' proposed jury instructions that portions of the organizers were not protected by copyright." *Id.* at 200. We held that because organizers were "copyrightable as compilations" that consisted "mainly or entirely of uncopyrightable elements," *id.* at 204, it was error for "the jury instructions . . . [to fail to] adequately distinguish between protectable and unprotectable material," *id.* at 207-08. However, as PC Onsite concedes, *Harper House* did not address whether merely instructing a jury as to the protectable elements is sufficient without also identifying those elements.

[3] Consideration of the whole work is proper under *Apple Computer* as long as "the *unprotectable* elements [are] identified." *Apple Computer*, 35 F.3d at 1446 (emphasis added). No case law or legal theory requires that "protectable" elements be identified as well. Here, the jury instructions properly identified the "unprotectable" elements of Fast Action Bingo. The district court instructed the jury that "to establish that PC Onsite is liable for infringement, Dream Games must show that the accused screen displays are virtually identical to protected elements of corresponding screen displays of the Fast Action Bingo game." It further instructed that "even a combination of unprotectable elements may be entitled to some copyright protection if the works are virtually identical." Finally, the district court identified in detail those elements of the copyrighted work that are not protected: "Functions such as 'Add user,' 'Games Menu' and 'Done' are not copyrightable . . . ," "Bingo cards, called numbers (often printed on balls), a key describing winning patterns and corresponding prizes, and the player's balance and winnings, are all elements of a video bingo game that are not protected by copyright." The district court correctly rejected PC Onsite's proposed instructions that listed four specific protected elements of Fast

Action Bingo because they would have improperly limited the jury's consideration to four aspects of Fast Action Bingo, as opposed to the whole work.

Because the district court specifically identified the unprotected elements, the jury instructions fairly and sufficiently explained the theory of the case and did not misstate the law. Neither party argues that the district court abused its discretion in formulating the exact wording of the instructions, and the text of the instructions supports this conclusion. Therefore, the district court did not abuse its discretion in giving the jury instructions.

## B.    Impact of Illegal Operation on Award of Damages

During the relevant time period, Dream Games operated Fast Action Bingo in two states, Wyoming and Utah. While Dream Games's lawsuit was pending, the Wyoming Supreme Court ruled that Fast Action Bingo was illegal in that state. *See Fraternal Order of Eagles Sheridan Aerie No. 186, Inc. v. State ex rel. Forwood*, 126 P.3d 847 (Wyo. 2006). The State of Utah also prohibits gambling,[4] and has seized several Fast Action Bingo machines operated in one particular bingo hall, but has not declared the game illegal without regard to operation. Before trial, the district court concluded that because Fast Action Bingo is definitely illegal in Wyoming, "there is no potential recovery" in that state, but whether there is recovery in Utah "really depends upon the facts." Ruling on PC Onsite's subsequent JMOL motion, the district court first noted that it "resolved that Fast Action Bingo is illegal" in Utah. It nevertheless held that because "the illegality I have found is not, per se, so it only pertains to the actual damages for violation of a copyright," Dream Games "may recover statutory damages."

---

[4]"The Legislature shall not authorize any game of chance, lottery or gift enterprise under any pretense or for any purpose." Utah Const. art. 6, § 27.

### 1. Availability of Actual or Statutory Damages

Although we have not previously addressed whether illegal use or operation of a work by the copyright owner precludes the award of actual or statutory damages for copyright infringement, analogous case law persuades us that it does not.

[4] Previously, we have held that fraudulent content is not a basis for denying copyright protection to a work, and is not a defense to infringement. *See Belcher v. Tarbox*, 486 F.2d 1087, 1088 (9th Cir. 1973) (refusing to deny copyright protection to fraudulent advertising). "[T]he currently prevailing view" is that "no works are excluded from copyright by reason of their content." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.17 (2008) (citing *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979)); *see also Belcher*, 486 F.2d at 1088 (explicitly disagreeing with a Fifth Circuit case later overruled by *Mitchell*). Dismissing the defense of obscenity to a claim of copyright infringement, the Fifth Circuit concluded in *Mitchell* that "[t]he maxim of unclean hands is not applied where plaintiff's misconduct is not directly related to the merits of the controversy between the parties, but only where the wrongful acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.' " 604 F.2d at 863 (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). It held that "[t]he alleged wrongdoing of the plaintiff does not bar relief unless the defendant can show that he has personally been injured by the plaintiff's conduct." *Id.*; *see also Fuller v. Berger*, 120 F. 274, 278 (7th Cir. 1903) ("[I]f the defendant can do no more than show that the complainant has committed some legal or moral offense, which affects the defendant only as it does the public at large, the court must grant the equitable remedy and leave the punishment of the offender to other forums."); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 406

(9th Cir. 1982) (recognizing that obscenity is not a defense to copyrightability).

As Professor Nimmer has written, the defense of illegality or unclean hands is "recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action. For instance, the defense has been recognized when plaintiff misused the process of the courts by falsifying a court order or evidence, or by misrepresenting the scope of his copyright to the court and opposing party." 4 *Nimmer on Copyright* § 13.09[B] (citing *L.A. News Serv. v. Tullo*, 973 F.2d 791, 799 (9th Cir. 1992)) (internal footnotes omitted).

Sound policy reasons support the "Congressional intent to avoid content restrictions on copyrightability." 1 *id.* § 2.17. In *Belcher*, we explained that "[t]here is nothing in the Copyright Act to suggest that the courts are to pass upon the truth or falsity, the soundness or unsoundness, of the views embodied in a copyrighted work." 486 F.2d at 1088. We noted that "[t]he gravity and immensity of the problems, theological, philosophical, economic and scientific, that would confront a court if this view were adopted are staggering to contemplate." *Id.*[5] Similarly, the *Mitchell* court was concerned that the broad use of the illegality defense would swallow the entire right to copyright protection. *See Mitchell*, 604 F.2d at 864 ("[L]imiting copyright protection on a broad public injury rationale would lead to absurd and unacceptable results. . . . Arguably an infringer could defend on the ground that the work had been transported into the state in the copyright owner's truck that does not meet federal safety and pollution requirements . . . . The possibilities are well nigh limitless.").

---

[5]In an astute aside applicable to material capable of illegal use, we noted that no "public policy would be served by eliminating [the copyright] restriction in the case of fraudulent matter and permitting it to be reprinted and circulated freely." *Belcher*, 486 F.2d at 1088 n.3.

**[5]** The *Mitchell/Belcher* principle leads to the conclusion that illegal operation of a copyrightable work neither deprives the work of copyright protection nor precludes generally available remedies. *See* 1 *Nimmer on Copyright* § 2.17 (applying the *Mitchell* principle to conclude that "the fact that a copyrightable work is being used for illegal purposes should not constitute a defense in a copyright infringement action"). If work that contains illegal content is copyrightable, then a work that contains legal content, but which may be used for illegal purposes is surely copyrightable. The same holds true for works that are capable of illegal uses in geographically limited areas. It would be absurd to deny a work the protection of a federal copyright because it is capable of illegal use in one or more states, but capable of perfectly legal use in other states.

The noncontrolling, decades-old cases cited by PC Onsite are not to the contrary because those courts did not consider the question presented in this case—whether illegal use constitutes a defense to infringement. Those courts first found that no infringement was committed, and then denied equitable remedies on the basis of its illegal use. *See Kessler v. Schreiber*, 39 F. Supp. 655, 656 (S.D.N.Y. 1941) (holding that "defendant has not infringed plaintiff's copyright," and that "because plaintiff's card is primarily intended to be used to carry out a lottery, he can not have relief in a court of equity"); *Affiliated Enters., Inc. v. Gantz*, 86 F.2d 597, 598-99 (10th Cir. 1936) (holding that "there are no allegations of fact showing infringement of the copyright," and that the "system is too closely akin [to an illegal lottery] to have the protection and assistance of a court of equity"). Here, by contrast, the jury concluded the defendant did infringe plaintiff's copyright.

**[6]** Thus, illegal operation of an otherwise copyrightable work does not deprive the work of copyright protection, nor is it a defense to infringement. Because Fast Action Bingo has a valid copyright, and the copyright was unlawfully infringed,

Dream Games is entitled to damages. The Copyright Act of 1976 provides that "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action . . . ." 17 U.S.C. § 504(c)(1). Nothing in the Copyright Act suggests that plaintiff's statutory right to elect the type of damages it seeks is forfeited upon presentation of evidence of illegality. Thus, we hold that an award of either type of damages available under the Copyright Act—actual or statutory—is not precluded by evidence of illegal operation of the copyrighted work, at least where the illegality did not injure the infringer. We therefore reject PC Onsite's challenge to the district court's award of statutory damages to Dream Games.

## 2. *Exclusion of Evidence of Illegal Operation*

The district court properly determined that the jury was to decide the amount of statutory damages. However, the district court did not allow PC Onsite to argue evidence of illegality to the jury. The court concluded that the jury should focus on the conduct of PC Onsite, and that any possible illegal activity by Dream Games was irrelevant to the willfulness or innocence of PC Onsite's conduct.

[7] "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." Fed. R. Evid. 103(a). The Copyright Act provides that the copyright owner, at his election, is entitled to "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). The Supreme Court has held that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340,

355 (1998). We have subsequently interpreted *Feltner* to uphold the constitutionality of the statutory damages provision, provided that at the plaintiff's election of a jury trial, we replace the term "court" in § 504(c) with "jury." *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1192-93 (9th Cir. 2001).

**[8]** Statutory damages further "compensatory and punitive purposes," and help "sanction and vindicate the statutory policy of discouraging infringement." *L. A. News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 996 (9th Cir. 1998) (internal quotation marks omitted). "If statutory damages are elected, [t]he [jury] has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (first alteration in original) (internal quotation marks omitted); *see also Krypton Broad.*, 259 F.3d at 1194; *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994). The jury is guided by " 'what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like . . . .' " *Peer Int'l Corp.*, 909 F.2d at 1336 (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952)). Other circuits have also held that the decisionmaker may consider plaintiff's conduct during litigation. *See Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989) (reducing award of statutory damages due to vexatious, oppressive, and unreasonable manner in which owner conducted infringement action); *Bourne Co. v. Hunter Country Club, Inc.*, 772 F. Supp. 1044, 1052 (N.D. Ill.1990), *aff'd* 990 F.2d 934, 939 (7th Cir. 1993) (reducing award of statutory damages when plaintiff's agent delayed eight months in answering inquiries as to whether certain material was copyrighted).

**[9]** Though the jury has wide discretion in setting the award, the district court maintains its role as the evidentiary gatekeeper. The court may exclude evidence when "its proba-

tive value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. " 'Unfair prejudice' within [this] context means an undue tendency to suggest decision on an improper basis." *Id.*, advisory committee's notes to 1972 proposed rules. Here, because of the "district court's familiarity with the details of the case and its greater experience in evidentiary matters," *Sprint/United Mgmt. Co. v. Mendelsohn*, 128 S. Ct. 1140, 1144-45 (2008), it was not an abuse of discretion to exclude evidence of illegal operations. It was reasonable for the district court to conclude that such evidence might improperly influence the jury to reduce the statutory damages award. Such reduction would have been improper because illegal operation does not diminish copyright protections or undermine the punitive purposes of the statutory damages provision. Further, illegal operation of a work does not provide information relevant to the nature of the copyright, the circumstances of the infringement, plaintiff's conduct during litigation, or any of the other factors commonly relied upon by decisionmakers in setting statutory damages awards.

PC Onsite misrelies upon *Advisers, Inc. v. Wiesen-Hart, Inc.*, 161 F. Supp. 831 (S.D. Ohio 1958). In *Advisers*, the court found that the copyrighted material at issue, a coupon book, "is fraudulent in nature in that it is used for the sole and express purpose of enticing the gullible into . . . business establishments." *Id.* at 834. Finding "that it was not the intent of Congress to award statutory damages of $1 per copy for books which are thus so fraudulent in nature," the court reduced statutory damages from approximately $23,000 to $2,500. *Id.*

First, *Advisers* was interpreting the Copyright Act of 1909, Pub. L. No. 349, 35 Stat. 1075 (repealed 1976), which has been superseded by the Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2541 (codified as amended at 17 U.S.C. §§ 101-810 (2000)). The 1976 Act made significant amendments to and expansions of the statutory damages provision. *Compare* Pub. L. No. 349, ch. 320, 35 Stat. 1075, at 1080

(repealed 1976), *with* 17 U.S.C. § 504(c) (1976). Second, *Advisers* did not actually explain the basis for its finding of Congressional intent to reduce statutory damages upon evidence of illegal content, and we have not been able to locate one, either in the Copyright Act of 1909 or the Copyright Act of 1976. Third, the *Advisers* decision predates *Belcher* and *Mitchell*, both of which identified policy reasons for rejecting a fraudulent content defense to a claim of copyright infringement. We thus are unpersuaded by the reasoning of the *Advisers* court, and conclude that the decisionmaker is not required to consider evidence of illegal operation of a copyrighted work in making an award of statutory damages.

Because illegal operation of a copyrighted work does not remove copyright protection or foreclose the award of either actual or statutory damages, we uphold the award of statutory damages to Dream Games. We also conclude that the district court did not abuse its discretion in excluding evidence of illegal operation from the jury's consideration on the ground that it was more prejudicial than probative.

## C. Dismissal of Garland Pierce on Judgment as a Matter of Law

Dream Games appeals the district court's denial of its motion for a partial new trial on claims against Garland Pierce, which we review in conjunction with the court's JMOL in favor of Garland Pierce. *See, e.g.*, *Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 322-24 (1967) (holding that an order conditionally granting or denying a motion for new trial under Federal Rule of Civil Procedure 50(c) or (d) is reviewable in conjunction with an appeal from the grant or denial of a renewed motion for judgment as a matter of law under Rule 50(b)).

### 1. Whether the Appeal Was Timely

The district court orally granted PC Onsite's JMOL motion on November 22, 2006, dismissing Pierce from the suit. Final

judgment was entered on March 30, 2007. On April 2, 2007, Dream Games timely filed a motion to amend or, alternatively, correct the judgment under Federal Rules of Civil Procedure 59 and 60, requesting the correction of a clerical error in the name of a defendant and seeking a permanent injunction enjoining PC Onsite from infringing copyright in Fast Action Bingo. On April 16, 2007, Dream Games moved under Rules 50(c)(2) and 59, requesting a partial new trial on Pierce's liability. No timeliness objection was raised by PC Onsite or addressed by the court. Dream Games's motion for a new trial was denied in a May 2, 2007, order, and an amended judgment was issued the same day.

**[10]** On appeal, PC Onsite attacks the timeliness of Dream Games's motion for a new trial.[6] Rule 59(b) mandates that this motion be filed no later than ten days after the entry of judgment. Under Rule 6(a), because the time limit is less than eleven days, intervening Saturdays, Sundays, and legal holidays are excluded. The untolled deadline was therefore April 13, 2007, three days before Dream Games filed its motion for a new trial. Dream Games's timely motion to amend or correct the judgment under Rule 59 and 60, however, affected the finality of the March 30, 2007, judgment. *See* Fed. R. App. P. 4(a)(4)(iv) (providing that a timely motion to amend the judgment under Rule 59 tolls the period for filing a timely notice of appeal). Because the judgment was not yet final when Dream Games filed its motion for a new trial, that motion was timely, and we have jurisdiction to consider the appeal.

### 2.  *The Merits of Pierce's Dismissal*

"Judgment as a matter of law is proper when the evidence

---

[6]Timeliness is a jurisdictional question, *Tillman v. Ass'n of Apartment Owners of Ewa Apartments*, 234 F.3d 1087, 1089 (9th Cir. 2000), and therefore, we consider it regardless of whether PC Onsite raised the issue in the district court, *see Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 594-95 (9th Cir. 1996).

permits a reasonable jury to reach only one conclusion." *Quiksilver*, 466 F.3d at 755 (internal quotation marks omitted). Dream Games argues on appeal that the district court erred in dismissing Pierce because the evidence could support the conclusion that Pierce was secondarily liable for infringement, either contributorily or vicariously. PC Onsite responds that Dream Games never asserted the secondary liability theory until oral argument on the JMOL motion.

**[11]** First, Dream Games waived its argument that the district court improperly dismissed Pierce on its theory of direct liability by failing to include that argument in its opening brief. We "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). Dream Games spent the entire relevant portion of its opening brief arguing that the district court erred because the evidence supported its new theory of secondary liability.

**[12]** Second, Dream Games failed to raise its theory of secondary liability at trial, and cannot now raise it on appeal. Dream Games's complaint against all defendants claimed only direct copyright infringement and did not mention vicarious or contributory liability. Neither did the February 7, 2006, joint pretrial order. Dream Games proposed a jury instruction regarding secondary liability, but on PC Onsite's objection, Dream Games deleted it, and did not include it in its own set of submitted instructions. It was only during oral argument on PC Onsite's JMOL motion that Dream Games argued for the first time that "even if [the evidence at trial] didn't support a direct infringement claim, it certainly supports a claim of inducement to infringe."

The theory of secondary liability is distinct from the theory of direct infringement. While direct infringement requires proof of unlawful copying, contributory infringement requires proof that a defendant "(1) has knowledge of a third party's

infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) (internal quotation marks omitted). Vicarious infringement requires proof that "that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 729 (9th Cir 2007).

We cannot entertain now Dream Games's argument that the district court erred by dismissing Pierce because he was secondarily liable. If Dream Games had intended to assert a theory of secondary liability, it should have done so either in the original or an amended complaint, following proper procedure. Instead, the original complaint failed to provide "fair notice" to defendants of such liability, *see Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997), and Dream Games failed to amend the complaint under Rule 15(a) to allege that theory.

**[13]** Nor was the issue of secondary liability tried by implied consent. *See* Fed. R. Civ. P. 15(b) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."). PC Onsite expressly objected to Dream Games's proposed jury instructions regarding secondary liability. *See* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1493 (2008) ("[W]hen a party has objected to the introduction of evidence on a new issue, the opposing party cannot later seek to amend the pleadings to conform to the evidence on the ground that the party impliedly consented to the trial of that issue."). Implied consent is also ruled out because the evidence introduced at trial, to the extent it was relevant to secondary liability, was also relevant to direct liability for infringement. *See id.* ("[W]hen the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, . . . and there was no indication at trial that the party

who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under . . . Rule 15(b)."). Allowing Dream Games to argue secondary liability in response to a JMOL motion and on appeal would unduly prejudice PC Onsite by not giving it fair notice of the claims at trial. *See Crawford v. Lungren*, 96 F.3d 380, 389 n.6 (9th Cir. 1996) (finding that plaintiff waived equal protection and due process claims when the complaint contained only a "passing reference" to those claims, and the arguments were "newly minted" on appeal); *see also* 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1491 ("An amendment will be allowed only if the parties have received actual notice of an unpleaded issue and have been given an adequate opportunity to cure any surprise that might result from the change in the pleadings.").

**[14]** Finally, to prevent prejudice, parties are typically considered bound by the statements of claims made in their pretrial order. *See* Fed. R. Civ. P. 16(e) (2006) ("This order shall control the subsequent course of action unless modified . . . to prevent manifest injustice."). As discussed above, the pretrial order contained no mention of secondary infringement liability. Because direct and secondary liability theories have such distinct elements and require different forms of proof, it would be unduly prejudicial to require PC Onsite to defend its JMOL motion or this appeal on a theory of secondary liability.

## IV. CONCLUSION

The district court properly admitted evidence of unprotectable elements and did not err in failing to more specifically identify the protectable elements to the jury. Dream Games was entitled to statutory damages despite evidence that Fast Action Bingo was operated illegally in two states. The district court did not err in excluding evidence of illegal operation of the copyrighted work from the jury's consideration. Nor did

the district court err in dismissing Garland Pierce on a motion for judgment as a matter of law.

**AFFIRMED.**